## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **ASOCIACIÓN PUERTORRIQUEÑA DE LA JUDICATURA, INC.**<br><br>Plaintiff,<br><br>v.<br><br>**THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO**;<br><br>Defendants | CIVIL NO. 17-1580<br><br><br><br>RE:<br>Declaratory Judgment;<br>48 U.S.C. §§ 2102 et seq.<br>(PROMESA) |

### AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

**APPEARS NOW** Plaintiff, **ASOCIACIÓN PUERTORRIQUEÑA DE LA JUDICATURA, INC.** (hereinafter "**APJ**"), through the undersigned attorneys, and hereby states and respectfully requests as follows:

### I.
### JURISDICTION

1. The United States District Court for the District of Puerto Rico has jurisdiction to entertain this action pursuant to Sec. 106(a) (48 U.S.C. § 2126) of the Puerto Rico Oversight, Management, and Economic Stability Act, 48 U.S.C. §§ 2101 et seq., (hereinafter "**PROMESA**" or the "**Act**"), which establishes that "[e]xcept as provided in [?]... any action against the Oversight Board, and any action otherwise arising out of this Act, shall be brought in the United States district court for the covered territory ... ...".

2. Puerto Rico is considered a "Territory" within the terms of **PROMESA**, pursuant to Sec. 5(20)(a) of the Act (48 U.S.C. § 2121).

3.  This action by the **APJ** is brought against the **Oversight Board for Puerto Rico** (hereinafter **"OBPR"**), as this entity has been established pursuant to Sec. 101(b)(1) of PROMESA (48 U.S.C. § 2121).

4.  The action for declaratory judgment by the **APJ** against the **OBPR** arises out of **PROMESA** because it concerns the provisions of the **Fiscal Plan** (**"FP"**) for the covered territory, which were developed, approved, and certified pursuant to 48 U.S.C. § 2141(a-f) and apply to the three public retirement systems: the Employees Retirement System (hereinafter **"ERS"**), the Teachers Retirement System (hereinafter **"TRS"**), and the Judiciary Retirement System (hereinafter **"JRS"**).

5.  This Honorable Court is authorized to provide declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

6.   Venue in the District of Puerto Rico is appropriate pursuant to 48 U.S.C. § 2126 because it is the district court for the covered territory (Puerto Rico).

## II.
## THE PARTIES

7.  Plaintiff **ASOCIACIÓN PUERTORRIQUEÑA DE LA JUDICATURA, INC.** was founded in 1978 as a membership association comprised by acting and retired judges of Puerto Rico's judicial branch.  The **APJ** is affiliated with various international entities who share similar interests, among which is the protection of an independent judiciary, essential to the republican form of government that was established in Puerto Rico in 1952 pursuant to the Congressional Mandate in Public Law 600 of July 3, 1950 ("The said constitution shall provide a republican form of government and shall include a bill of rights.").  It is a non-profit corporation organized under the laws of Puerto Rico.

8.  Plaintiff **APJ** sues in its capacity as a membership organization on behalf of and in its

capacity as a representative of its members, who require from this Court the declaratory relief plead in this Complaint to ensure that the acts of Defendant the **OBPR** in requiring terms, approving and certifying a **FP** for Puerto Rico are aligned with the law, such that Plaintiff's members' interests are not detrimentally affected and Plaintiff's members suffer damages as a result.

9.   Defendant the **OBPR** is an entity within the territorial government of Puerto Rico as provided for in **PROMESA** (48 U.S.C. § 2121(c)(1)), which developed, approved, and certified a **FP** for the territory pursuant to 48 U.S.C. § 2141(a-f).

10.   During the process of developing, approving, and certifying a **FP** for the territory of Puerto Rico the **OBPR** required that the **GPR** and **Governor Rosselló** include in the **FP** (as required by **PROMESA**) the progressive reduction of annual pension benefits outlays by ten per cent (10%) by the year 2020, subject <u>only</u> to the constraint "that no member [be] pushed below the federal poverty line as a result of the reductions" and, in doing so, acted *ultra vires*.

### III.
### FACTUAL ALLEGATIONS

11. On June 29, 2016, President Barack Obama signed **PROMESA** into law, as Public Law 114-187.

12. Broadly speaking, **PROMESA** established an Oversight Board for Puerto Rico (Sec. 101(a); 48 U.S.C. § 2121) and required certain actions of this **OBPR** aimed, broadly, at providing a method for a covered territory to achieve fiscal responsibility and access to capital markets.

13. In its Sec. 104(a-p) (48 U.S.C. § 2124) **PROMESA** itemized the powers granted to the **OBPR** by Congress:

   a.   Holding hearings, siting, and acting at times and places, taking testimony and

    receiving evidence;

b.  Obtaining official data from the federal government and the territorial government;

c.  Obtaining creditor information;

d.  Accepting, using and disposing of gifts, bequests, or devises of servoces or property for the purpose of facilitating the work of the OBPR;

e.  Issuing subpoenas;

f.  Authority to enter into contracts;

g.  Issuing voluntary agreement certifications to a covered territory or a covered territorial instrumentality;

h.  File petitions for restructuring and submitting or modifying a plan of adjustment;

i.  Seek judicial enforcement of its authority ti carry out its responsibilities under the Act;

j.  Imposing penalties or sanctions for certain acts regarding the provision of misleading and/or incorrect information to the OBPR;

k.  Ensure the prompt and efficient payment and administration of taxes through the adoption of electronic technologies;

l.  Obtain administrative support services from the administrator of General Services;

m.  Investigate the disclosure and selling practices in connection with the purchase of bonds issued by a covered territory; and,

n.  Make public the findings of any investigation regarding the disclosures and purchase of bonds, as explained in the item preceding.

14. Additionally, the **OBPR** was also entrusted with devising a schedule for the process of developing, submitting, approving and certifying **FPs** for the territory and any covered territorial instrumentalities through various alternative processes (Sec. 201(a-f); 48 U.S.C. § 2141) and which must meet explicit requirements enumerated in the Act (Sec. 201(b)(1)(A-N); 48 U.S.C. §

2141).

15. One of the alternatives paths established in the Act to develop, submit, approve and certify a **FP** for the Territory entails the Government of Puerto Rico submitting to the **OBPR** the required **FP**, which the **OBPR** shall then: review; determine whether it meets the **PROMESA** requirements; issue recommendations for the proposed **FP** to achieve compliance with **PROMESA** requirements; offer an opportunity for the Governor to correct in order to achieve compliance; and, finally, certify it (48 U.S.C. § 2142(a), (c)(3), (d)(1), and (e)(1)).

16. Another alternative contemplates that, should the Governor fail to submit to the **OBPR** a **FP** that the **OBPR** determines complies with **PROMESA**, the **OBPR** shall develop and submit to the Governor and the Legislature a **FP** that does satisfy the **PROMESA** requirements, which **FP** shall then be certified compliant by the **OBPR** (48 U.S.C. § 2142(a), (d)(2), and (e)(2)).

17. A third and final alternative allows the Governor and the **OBPR** to jointly develop a **FP** for the year that meets the requirements of **PROMESA**, with both entities certifying that the plan reflects a consensus between the Governor and the **OBPR**.

18. Finally, **PROMESA** provides that the provisions of the Act shall prevail over any general or specific provision of territory law, State law, or regulation that is inconsistent with the Act (28 U.S.C. § 2103).

19. **PROMESA** did not state that the provisions of the Act were to prevail over inconsistent provisions of the United States Constitution and/or acts of the United States Congress, *i.e.*, Public Law 600 of 1950 and/or Public Law 447 of 1952 (federal law) or the Puerto Rico Constitution.

20. On October 14, 2016, sitting Governor Alejandro García Padilla submitted to the **OBPR** a first *Fiscal and Economic Growth Plan (FEGP)* ("October 16 FP"), thus initiating the process

of review, recommendation, and assessment of the proposed plan.

21. In response to the October 14 proposed **FP**, on November 23, 2016, the **OBPR** addressed a letter to the Governor providing a preliminary assessment and timeline for certification of the plan, which included five (5) principles that would guide the **OBPR** in assessing the **FP's** compliance with the **PROMESA** requirements (*see* 48 U.S.C. § 2141(b)(1)(A-N)).

22. By means of a second letter dated December 20, 2016, the **OBPR** addressed sitting Governor García-Padilla and Governor-Elect Rosselló in order to outline the key findings and framework for an updated **FP**, among which the **OBPR** specifically suggested immediate action in various fronts including pension system reform.

23. On January 18, 2017, the **OBPR** sent a third letter to **Governor Rosselló**, whereby it outlined a path for achieving the goal of aligning recurring revenues and expenditures by the 2019 fiscal year, indicating that this goal required action in five (5) principal areas, which included pension reform.

24. As regards pension reform, the January 18, 2017 letter included a table devised by the **OBPR**, premised on a baseline fiscal gap of $7.6 billion, by which the **OBPR** directed **Governor Rosselló** to achieve a savings of $0.2 billion through a reduction of 10% in pension costs and related expenses.

25. On February 28, 2017, **Governor Rosselló** submitted a revised **FP** (the "February 28 proposed FP") to the **OBPR**.

26. The February 28 Proposed **FP** provided for a potential 3% aggregate reduction in retirement plan disbursements that excluded pensioners receiving less than $2,000 per month.

27. In its March 9, 2017 written reaction to the February 28 proposed **FP** submitted by **Governor Rosselló**, the **OBPR** manifested its support for the Government's proposal to reduce

pension costs in a progressive way, but indicated that the reductions in benefit costs proposed in this plan were insufficient, because they were substantially lower than the 10% benchmark set by the **OBPR** in its January 18, 2017 letter.

28. In its March 9 letter, the **OBPR** required amendment of the items discussed, which included the insufficient reduction in pension benefit costs, in order for the **FP** to achieve certification by the **OBPR**.

29. On March 13, 2017, **Governor Rosselló** submitted to the **OBPR** a **FP** that the latter approved and certified (the "March 13 FP").

30. In its March 13, 2017 Board Resolution certifying the **FP**, the **OBPR** summarized the process of proposal review and issuance of recommendations and directives by the **OBPR** to **Governor Rosselló,** detailing the two (2) amendments it had required be made to **Governor Rosselló's** February 28 proposed **FP** in order to grant its approval and certification.

31. In the aforementioned Board Resolution, the **OBPR** summarized Amendment No. 2, directed at the three pension systems, and which required an overhaul of the public pension system through the measures in the Government's proposed **FP**, as follows: "**supplemented to provide for progressively reduced total pension outlays by 10% by fiscal year 2020, to ensure the system can meet its Obligations...**" (emphasis ours)

32. The progressive reduction of total pension outlays by 10% by fiscal year 2020 required by the **OBPR** was subject <u>only</u> to the constraint "that no member [be] pushed below the federal poverty line as a result of the reductions".

33. Pursuant to Sec. 202 of **PROMESA** (48 U.S.C. § 2142), the budget of the covered territory (Puerto Rico) shall comply with the applicable **FP**, previously approved and certified by the **OBPR**.

34. As such, all government actions going forward must comply with and achieve the goals set out in the applicable **FP**, which for the fiscal year 2017-2018 is the March 13 **FP** approved and certified by the **OBPR** on the same date.

35. The **OBPR** modified and approved March 13 FP did not exclude the pension system of the judiciary from the 10% progressive reduction of total pension outlays.

36. In the aforementioned documentation regarding this matter, the reference to "Retirement Plans" and/or "Pension Systems" bundles together all three (3) retirement systems for purposes of analysis, forecasts, and discussion regarding the determination of appropriate measures to be implemented in order for the **FP**'s approval and certification by the **OBPR**.

37. In approving and certifying the March 13, 2017 **FP** that provided for the reduction in pensions of the **JRS**, the **OBPR** acted *ultra vires*, in direct violation of the Congressional requirement that Puerto Rico implement a republican form of government through its constitution.

38. In approving and certifying the March 13, 2017 **FP** that provided for the reduction in pensions of the **JRS**, the **OBPR** acted *ultra vires*, in direct violation of Congressional approval, by means of Public Law 447, of the Puerto Rico Constitution establishing a three-branch, separation of powers system of government, with all its essential elements.

39. In approving and certifying the March 13, 2017 **FP** that provided for the reduction in pensions of the **JRS**, the **OBPR** acted *ultra vires*, violating the guarantees of the United States and Puerto Rico Constitutions as well as the applicable precedent of the United States and Puerto Rico Supreme Courts (*see, e.g., Brau, Linares v. ELA*, 190 D.P.R. 315 (2014)), directing that the judicial independence of the "non-reduction clauses" applies to the pensions of the Judiciary.

40. A declaratory judgment by this Honorable Court pursuant to 28 U.S.C. §§ 2201-2202 is

required to resolve a definite and concrete dispute shown by the facts alleged above; between parties having adverse legal interests; which dispute is real, substantial and of sufficient immediacy; and admits specific relief through a decree of a conclusive character.

**IV.**
**FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS:**
**REQUEST FOR DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. §§ 2201-2202**
**REGARDING THE *ULTRA VIRES* ACT OF THE OBPR CONSISTING OF THE**
**APPROVAL OF A FISCAL PLAN THAT IS CONTRARY TO**
**PUBLIC LAW 600 OF 1950 AND PUBLIC LAW 447 OF 1952.**

41. All the allegations set forth above are incorporated herein as if restated again in their entirety.

42. On July 3, 1950, the Congress of the United States adopted Public Law 600, authorizing the people of Puerto Rico to organize a government pursuant to a constitution of their own adoption.

43. Public Law 600 required that Puerto Rico call a constitutional convention to draft a constitution that "**shall provide for a republican form of government**".

44. By means of Public Law 447, after the President of the United States had declared that the constitution of the Commonwealth of Puerto Rico conformed fully with Public Law 600 and the Constitution of the United States, the United States Congress approved the Puerto Rico Constitution with two amendments, on of required that any further amendments to such constitution comply with Public Law 447, with the applicable provisions of the Constitution of the United States, with the Puerto Rican Federal Relations Act, and with Public Law 600.

45. Upon instituting a republican form of government in compliance with the mandate of Public Law 600, Puerto Rico's Constitution adopted the three-branch separation of

powers model, providing for a Legislative Branch, and Executive Branch and a Judiciary Branch. Art. I, Sec. 2, PR Const.

46. For the same purpose, the Constitutional Convention also included provisions in the Puerto Rico Constitution recognizing the administrative autonomy and independence of the Judicial Branch and adopting the same guarantees fixed by the United States Constitution for federal judges.  *See Brau, Linares v. ELA*, 109 D.P.R. 315, 345 (2014), citing *González v. Tribunal Superior*, 75 D.P.R. 585, 609 (1953).

47. In particular, Art. VI, Sec. 11 of  the Puerto Rico Constitution contains what is commonly known as the "Non-Diminution clause", providing that the salaries of the appointed judges are to be set by special law and will not be amenable to reduction during the length of the term of their appointment.

48. Additionally, Sec. 10 of Art. VI of the Puerto Rico Constitution provides that no law shall reduce the salaries or remuneration ("emolumentos") of a public officer ("funcionario público") after his/her election or appointment.

49. Furthermore, the Puerto Rico Constitution expressly provides in its Art. V, Sec. 10, that the Legislative Assembly will establish a retirement plan or system for the members of the Judiciary that will be mandatory upon reaching seventy (70) years of age.

50. All of the above, as memorialized in the Puerto Rico Constitution, became an act of the United States Congress when Congressional approval of the Puerto Rico Constitution was granted by means of Public Law 447.

51. By approving a **FP** that that requires **progressively reduced total pension outlays by 10% by fiscal year 2020** and that is constrained only by the requirement that no member [be] pushed below the federal poverty line as a result of the reductions – to be achieved

by cuts from 6% to 24% of all pensions greater than $2,000, including those of the Judiciary – the **OBPR** acted *ultra vires*.

52.  The *ultra vires* act of the **OBPR** consisted of imposing measures on the GPR that are contrary to the mandate in the Congressional Act approving the Puerto Rico Constitution, which in turn, provides for a republican form of government premised on the essential three-branch separation of powers republican model.

53.  A present case and controversy exists respecting the Plaintiff's members' right to not have their pensions reduced in any manner versus the obligation of the **OBPR** to approve and certify a **FP** for the territory.

54.  A present case and controversy exists respecting the Plaintiff's members' right to conform a Judiciary branch with independence within the republican form of government established in Puerto Rico by an act of Congress versus the obligation of the **OBPR** to approve and certify a **FP** for the territory.

## VI.
### SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS: REQUEST FOR DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. §§ 2201-2202 REGARDING THE UNCONSTITUTIONAL ACT OF THE OBPR CONSISTING OF THE APPROVAL OF A FISCAL PLAN THAT REDUCES THE PENSIONS OF THE JUDICIARY CONTRARY TO THE UNITED STATES AND PUERTO RICO CONSTITUTIONS.

55.  All the allegations set forth above are incorporated herein as if restated again in their entirety.

56.  In its 2014 Opinion in *Brau, Linares*, the Puerto Rico Supreme Court held that any amendment to the salaries and/or remuneration of the members of the judiciary, including amendments or changes to their pension system, was required to apply prospectively to new appointees and could not include judges who had already retired and/or were already

appointed and rendering services, because the latter would be contrary to the "non-diminution clause" of the Puerto Rico Constitution and United States Supreme Court precedent finding that the term "compensation" includes the salaries, other benefits and pensions afforded to members of the judiciary .

57. The ruling of the Puerto Rico Supreme Court in *Brau* is aligned with the mandate by the United States Congress that the Constitution to be drafted and adopted by the people of Puerto Rico establish a republican form of government.

58. The ruling of the Puerto Rico Supreme Court in *Brau, Linares* is also aligned with the United States Supreme Court holding in *Booth v. U.S.,* 291 U.S. 339 (1934), which establishes that the term "compensation" includes the salaries and other benefits afforded to members of the judiciary, such as their retirement pensions (*Brau, supra*, at 343, citing *Booth v. U.S., supra*), and therefore Congress may not reduce the pensions of federal judges retroactively (*Brau, supra*, at 344, citing *Booth v. U.S., supra*, at p. 352).

59. The March 13, 2017 Board Resolution requiring that the **GPR** and **Governor Rosselló** include in the final **FP** for the GPR a progressive reduction of total pension outlays by 10% by the 2020 fiscal year, subject only to the constraint that "that no member [be] pushed below the federal poverty line as a result of the reductions," did not exempt the pensions of the judiciary from the directed reduction.

60. At page 21 of the March 13, 2017 **FP** that was approved and certified by the **OBPR**, the only express exception detailed under the category "Adjust Retirement Benefits" is the protection of the benefits of the lowest income earners.

61. Pursuant to the terms of the **FP** approved and certified by the **OBPR**, the progressive reduction of 10% in pension outlays will affect the pensions of members of the judiciary,

as well as the pensions of employees of the executive branch and those of teachers.

62. The **FP** that was approved and certified by the **OBPR** in March 2017 did not expressly exclude the pensions of the Judiciary Branch from its progressive reduction of 10% in pension outlays.

63. Amendment No. 2 by the **OBPR** failed to exempt from the reductions required the pensions of the **JRS**, in compliance with the Puerto Rico and the United States Constitutions, as well as the applicable case law of the United States and the Puerto Rico Supreme Courts.

64. As the **FP** has been approved and certified by the **OBPR**, judges receiving pensions larger that $2,000 per month will suffer reductions in their benefits anywhere from 6% to 24%.

65. To avoid such an unconstitutional act by the **GPR** and **Governor Rosselló**, as required by the **OBPR**, this Honorable Court must issue Declaratory Judgment establishing that the requirement by the OBPR that the pensions of the Judiciary be reduced is *ultra vires* and the GPR and/or Governor Rosselló must abstain from implementing it.

66. A present case and controversy exists between the Plaintiff's members' right not to have their pensions reduced in any manner and the requirement in the FP approved by the **OBPR** that such act be undertaken by the GPR and/or Governor Rosselló.

67. A present case and controversy exists between the Plaintiff's members' right not to have their pensions reduced in any manner and the mandate in Public Law 447 that the Puerto Rico Constitution not be amended in any manner contrary to the Constitution of the United States and Public Laws 600 and 447, among others

**REQUEST FOR RELIEF**

68. The facts laid out in the allegations above present a "case of actual controversy" amenable to of resolution by means of a declaratory judgment (48 U.S.C. § 2201).

69. The controversy presented in the factual allegations above is neither hypothetical nor abstract, such that it admits specific relief through a decree of conclusive character rather than present an opportunity to issue an advisory opinion regarding what the law would be upon a hypothetical state of facts. (*Medimmune, Inc. v. Genentech, Inc.*, 127 S.Ct. 764, 771 (2007), citations omitted.)

70. A declaratory judgment to the effect requested will provide an immediate and definite determination of the legal rights of parties having conflicting interests, such the this Honorable Court's judicial function will be appropriately exercised (*Medimmune, Inc., supra.*).

71. The facts alleged present a "case of actual controversy" respecting Plaintiff's members' right that their pensions not be reduced during their term in office *vis-a-vis* the acts of the **OBPR** in approving and certifying an FP for Puerto Rico that mandates such a reduction.

72. The facts alleged present a "case of actual controversy" respecting Plaintiff's members' right to conform an independent judiciary within a republican system of government, as established by Public Laws 600 and 447 of Congress *vis-a-vis* the acts of the **OBPR** in approving and certifying an FP for Puerto Rico that alters the basic premises of Puerto Rico's constitutionally established system of government.

73. This Honorable Court is able and authorized to resolve the "case of actual controversy" presented by declaratory action.

**WHEREFORE**, Plaintiff, on behalf of and for its members, all participants in the JRS, requests the following relief:

Declaratory Judgment to the effect that that in approving and certifying the FP, the **OBPR** acted *ultra vires* in mandating a retroactive reduction in the pensions of the Judiciary.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico this 3rd day of May, 2017.

> **INDIANO & WILLIAMS, P.S.C.**
> 207 del Parque Street; 3rd Floor
> San Juan, P.R. 00912
> Tel: (787) 641-4545; Fax: (787) 641-4544
> david.indiano@indianowilliams.com
> jeffrey.williams@indianowilliams.com
> leticia.casalduc@indianowilliams.com
>
> by:  ___*s/ David C. Indiano*___
>         DAVID C. INDIANO
>         USDC-PR NO. 200601
>
> by:  ___*s/ Jeffrey M. Williams*___
>         JEFFREY M. WILLIAMS
>         USDC-PR No. 202414
>
> by:  ___*s/ Leticia Casalduc-Rabell*___
>         LETICIA CASALDUC-RABELL
>         USDC-PR No. 213513